# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-12-00309-CV

**Appellant, Larry F. York// Cross-Appellants, Texas Guaranteed Student Loan Corporation; and Greg Abbott, Attorney General for the State of Texas**

**v.**

**Appellees, Texas Guaranteed Student Loan Corporation; and Greg Abbott, Attorney General for the State of Texas// Cross-Appellee, Larry F. York**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 261ST JUDICIAL DISTRICT NO. D-1-GN-12-000004, HONORABLE LORA J. LIVINGSTON, JUDGE PRESIDING

## O P I N I O N

The Texas Guaranteed Student Loan Corporation (TGSL) is a public non-profit corporation that is subject to both the Texas Open Meetings Act (OMA) and, with some specific exclusions not applicable here, the Texas Public Information Act (PIA). *See* Tex. Educ. Code §§ 57.01, .11 (regarding TGSL); *see generally* Tex. Gov't Code §§ 551.001–.146 (provisions of OMA), 552.001–.353 (provisions of PIA). In this appeal from a declaratory-judgment suit challenging an Attorney General's open-records ruling, we consider the interplay between those two open-government guarantees as they impact public access to certain TGSL records.

On cross-motions for summary judgment, the district court held that TGSL was required to disclose minutes from the open meetings of its board of directors, but could withhold certain documents and information that TGSL had attached to those minutes. The court further held that TGSL was required to disclose records relating to a wholly owned, for-profit subsidiary, but

could withhold its "Strategic Plan" and "President's Reports," as well as pricing information contained in an application TGSL had submitted to the federal government. Additionally, the district court ruled that the requestor, Larry F. York, could not recover attorney's fees.

TGSL, York, and the Attorney General each appeal the district court's judgment. Essentially, TGSL argues that none of the records at issue were subject to disclosure, York urges that all of them were, and the Attorney General agrees with TGSL as to some of the records and with York as to the others. York further contends that he is entitled to attorney's fees. We will affirm the district court's judgment in part and reverse and render in part.

## BACKGROUND

In 1979, the Texas Legislature created TGSL as a public non-profit corporation to administer a guaranteed student loan program "to enable qualified students to receive postsecondary education." *See* Act of May 24, 1979, 66th Leg., R.S., ch. 706, §§ 57.01, .11, 1979 Tex. Gen. Laws 1711, 1711–12 (current version at Tex. Educ. Code §§ 57.01, .11). Since its inception, TGSL has offered student-loan information, products, and services to help students and families realize "their aspirations for education beyond high school." *See* Tex. Educ. Code § 57.01 (prescribing policy goals of guaranteed student loan program). For example, TGSL is one of several guaranty agencies that administers the Federal Family Education Loan Program (FFELP) on behalf of the United States Department of Education (DOE). *See* 20 U.S.C. §§ 1071–1087-4 (provisions of FFELP). TGSL also offers "nationwide educational debt recovery solutions to colleges, universities, and state guarantors" through its wholly owned for-profit subsidiary, Education Assistance Servs., Inc. (EAS). *See Education Assistance Services, Inc.*, http://www.easerv.com (last visited May 23, 2013).

TGSL's enabling statute affirmatively makes the corporation subject to the OMA. *See* Tex. Educ. Code § 57.11(c). Likewise, TGSL does not dispute that it is subject to the PIA, a construction that is also implicit in a provision of TGSL's enabling statute specifically declaring that "[s]tudent loan borrower information [it] collect[s], assemble[s], or maintain[s] is confidential and is not subject to disclosure under Chapter 552, Government Code." *See* Tex. Educ. Code § 57.11(d); *see also* Tex. Att'y Gen. Op. No. MW-295 (1981) (concluding that TGSL was subject to prior version of the PIA).

In September 2011, York, an attorney, submitted to TGSL a "Public Information Act Request" seeking twelve specific records or categories of records relating to the corporation's activities, finances, governance, personnel, and affiliated entities, including EAS. In response, TGSL sought a decision from the Attorney General that it could withhold certain records, or portions thereof, that would be responsive to five of York's twelve requests. *See* PIA § 552.301 (request for attorney general decision regarding applicability of PIA exceptions from mandatory disclosure). The responsive records that TGSL sought to withhold in whole or in part and that remain material to the litigation have been categorized by the parties as follows:

- An application TGSL submitted to the DOE in response to DOE's solicitation of proposals to enter into "Voluntary Flexible Agreements" with the Secretary of DOE. A Voluntary Flexible Agreement (VFA) allows the DOE to relax certain statutory requirements to encourage development of programs and techniques aimed at helping borrowers avoid student-loan default.

- A TGSL "Strategic Plan" that was identified in the corporation's 2010 annual report.

- TGSL "President's Reports."

- Certain documents pertaining to EAS, TGSL's wholly owned, for-profit subsidiary. Specifically, York requested "[r]ecords indicating states in which [EAS] operated from

3

January 1, 2009, to present" and "[r]ecords indicating the nature of activities of [EAS] in all states in which it operated from January 1, 2009, to present."

- Certain portions of the "minutes" from the meetings of the TGSL board of directors from January 1, 2009, through the present, including various documents and exhibits that TGSL had attached to the written record of the meetings.[1]

As TGSL has acknowledged on appeal, all but one of these categories overlap: the Strategic Plan, President's Reports, and EAS-related documents that currently remain at issue are all contained in, or consist of, minutes from TGSL's board meetings and the attachments thereto.[2] Only TGSL's VFA application represents a category of records entirely separate from the minutes and attachments. In this regard, it becomes relevant that (1) TGSL's board meetings are open meetings, *see* Tex. Educ. Code § 57.11; OMA § 551.002; and (2) the OMA provides that "[t]he minutes . . . of an open meeting are public records and shall be available for public inspection and copying on request to the governmental body's chief administrative officer or the officer's designee." OMA § 551.022.

In its briefing to the Attorney General, *see* PIA § 552.301, TGSL urged that each of the records it sought to withhold was shielded from mandatory disclosure by PIA exceptions that principally included section 552.104, which excepts "information that, if released, would give advantage to a competitor or bidder," *see id.* § 552.104, and section 552.110, subsection (b), which

---

[1] York requested "[m]inutes of TG Board Meetings January 1, 2009, to present, including specific minutes pertinent to the Board's review, discussion, and voting to approve submission of a proposal to enter into a Voluntary Flexible Agreement with the Secretary of the [DOE] and specific minutes pertinent to the Board's review, discussion, and voting to approve acquisition, funding, and operation of Education Assistance Services, Inc."

Although it appears that TGSL initially withheld the entirety of the responsive board minutes, it eventually produced redacted copies that withheld only the portions that it claimed were shielded from disclosure under the PIA.

[2] TGSL initially sought to withhold certain responsive records relating to EAS that were not contained in the board minutes or attachments, but subsequently produced them.

4

excepts "[c]ommercial or financial information for which it is demonstrated based on specific factual evidence that disclosure would cause substantial competitive harm to the person from whom the information was obtained," *see id*. § 552.110(b).[3] Although it acknowledged that the minutes had been recorded at a meeting made open to the public under the OMA, *see* Tex. Educ. Code § 57.11; OMA § 551.002, TGSL urged that the PIA's procedures and limitations governed public access to the minutes, including the PIA's exceptions to mandatory disclosure.

The Attorney General issued a decision concluding that the OMA and PIA collectively required TGSL to disclose virtually all of the records it had sought to withhold. The sole exception was certain "pricing information" included in TGSL's VFA application, which the Attorney General determined was shielded from mandatory disclosure by PIA section 552.104. *See* Tex. Att'y Gen. OR2011-18843.

In response to this decision, TGSL filed the underlying suit against the Attorney General, seeking a declaration that it was not required to disclose any of the disputed records. *See* PIA §§ 552.324–.325 (authorizing suit by governmental body seeking to withhold information and designating parties to such a suit). York intervened in the case, seeking a declaration that none of the disputed records were subject to a PIA exception and that TGSL must produce them all. *See id*. § 552.325(d) (allowing intervention by requestor). Both TGSL and York

---

[3] EAS also submitted briefing purporting to assert, in its own behalf, that the disputed records pertaining to it were shielded from disclosure by PIA sections 552.104 and 552.110, subsection (b). *See* PIA § 552.305 (authorizing a third party whose "privacy interests may be involved" in a disputed request, "including a case under Section . . . 552.104 [or] 552.110," to submit such briefing). However, EAS did not seek to participate as a party in the litigation below and it is not a party to this appeal. Consequently, we are not called upon to address, and express no opinion regarding, whether EAS had any right to prevent disclosure of these documents independently from TGSL.

also prayed for attorney's fees and costs. *See id.* § 552.323 (granting trial court discretion to award attorney's fees to "plaintiff or defendant who substantially prevails").

TGSL and York proceeded to file cross-motions for summary judgment on their respective claims. TGSL's motion sought summary judgment declaring that, in addition to the pricing information that the Attorney General decided it could withhold, (1) PIA section 552.104 shielded portions of its "Strategic Plan and minutes," including attachments, from disclosure; (2) PIA section 552.110 shielded portions of the "minutes" relating to EAS from disclosure; and (3) certain portions of its "board minutes, including all attachments," were not within the "minutes" that the OMA declared to be "public records." York, in turn, sought summary judgment declaring that all of the disputed records were subject to disclosure in their entirety because they were either or both "minutes" made public by the OMA and/or that no PIA exception applied. TGSL and York also sought competing summary judgments on York's attorney's fees claim.

The district court rendered judgment granting both motions in part and denying them in part. It granted TGSL's motion and denied York's to the extent of permitting the corporation to withhold (1) the pricing information in the VFA application (as the Attorney General had decided); (2) "the attachments, and exhibits thereto, to [TGSL's] Minutes," and specifically, (3) the Strategic Plan; and (4) the President's Reports. The court also granted TGSL's motion and denied York's with respect to York's attorney's fees claim, thereby denying York any recovery. But the district court granted York's motion and denied TGSL's to the extent of requiring TGSL to disclose (1) "the actual provisions of the Minutes themselves" (as contrasted with the attachments and exhibits thereto) and (2) the records (i.e., board minutes) pertaining to EAS.

6

TGSL, York, and the Attorney General each perfected an appeal from the district court's judgment.

## ANALYSIS

TGSL and York both appeal the district court's summary-judgment rulings that were adverse to each of them. Specifically, TGSL brings two issues urging that the district court erred in ordering disclosure of the disputed excerpts from "the actual provisions of the Minutes themselves" because these were either (1) shielded from voluntary disclosure by PIA section 552.104, or (2) concerned EAS, a private entity not subject to the PIA, and were shielded by PIA section 552.110(b). York, in contrast, brings a single issue contending that the district court erred in holding that the pricing information in TGSL's VFA application, the Strategic Plan, the President's Reports, and any other attachments or exhibits to TGSL's board minutes could be withheld. York additionally urges that the district court erred or abused its discretion in denying him attorney's fees.

In his appeal, the Attorney General concurs with York in arguing that the district court erred in holding that the Strategic Plan, the President's Reports, and any other attachments or exhibits to TGSL's board minutes could be withheld.

**Standard of review**

We review the district court's summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). Summary judgment is proper when there are no disputed issues of material fact and the movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c);

7

*Shell Oil Co. v. Khan*, 138 S.W.3d 288, 291 (Tex. 2004) (citing *Knott*, 128 S.W.3d at 215–16). Where, as here, both parties move for summary judgment on overlapping issues and the district court grants one motion and denies the other, we review the summary-judgment evidence presented by both sides, determine all questions presented, and render the judgment that the district court should have rendered. *Texas Workers' Comp. Comm'n v. Patient Advocates of Tex.*, 136 S.W.3d 643, 648 (Tex. 2004); *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000). We must affirm a summary judgment if any of the grounds asserted in the motion is meritorious. *Patient Advocates*, 136 S.W.3d at 648; *FM Props.*, 22 S.W.3d at 872.

To the extent that the parties' issues turn on the construction of a statute—such as construction of the OMA or PIA—we review these questions de novo. *State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006); *City of Garland v. Dallas Morning News*, 22 S.W.3d 351, 357 (Tex. 2000). Our primary objective in statutory construction is to give effect to the Legislature's intent. *Shumake*, 199 S.W.3d at 284. We seek that intent "first and foremost" in the statutory text. *Lexington Ins. Co. v. Strayhorn*, 209 S.W.3d 83, 85 (Tex. 2006). "Where text is clear, text is determinative of that intent." *Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 437 (Tex. 2009) (op. on reh'g) (citing *Shumake*, 199 S.W.3d at 284; *Alex Sheshunoff Mgmt. Servs. v. Johnson*, 209 S.W.3d 644, 651–52 (Tex. 2006)). We give such statutes their plain meaning without resort to rules of construction or extrinsic aids. *Texas Lottery Comm'n v. First State Bank of DeQueen*, 325 S.W.3d 628, 635, 637 (Tex. 2010). Only when statutory text is susceptible to more than one reasonable interpretation is it appropriate to look beyond its language for assistance in determining legislative intent. *See In re Smith*, 333 S.W.3d 582, 586 (Tex. 2011). In construing the PIA, however, we give "due consideration" to the Attorney General's PIA decisions, even

though they are not binding, because the Legislature has directed the Attorney General to determine whether records must be disclosed pursuant to that statute. *See* PIA §§ 552.008(b), .306 (requiring Attorney General to render decisions regarding PIA); *Abbott v. City of Corpus Christi*, 109 S.W.3d 113, 121 (Tex. App.—Austin 2003, no pet.); *Rainbow Grp. Ltd. v. Texas Emp't Comm'n*, 897 S.W.2d 946, 949 (Tex. App.—Austin 1995, writ denied).

**OMA**

Because nearly all of the records at issue potentially fall within the OMA's provisions making the "minutes" of open meetings "public records" subject to disclosure upon request, we will begin with an analysis of that statute's implications.

The OMA's purpose is to "safeguard the public's interest in knowing the workings of its governmental bodies." *Cox Enters., Inc. v. Board of Trs. of Austin Indep. Sch. Dist.*, 706 S.W.2d 956, 960 (Tex. 1986) (citing former version of the OMA). To that end, the OMA requires that every meeting of a governmental body be open to the public, subject to several narrow exceptions not applicable here. *See* OMA § 551.002 (providing that "[e]very regular, special, or called meeting of a governmental body shall be open to the public, except as provided by this chapter"); *Cox*, 706 S.W.2d at 958. Additionally, any person attending a meeting made open to the public by the OMA "may record all or any part of [that] meeting by means of a tape recorder, video camera, or other means of aural or visual reproduction," subject to the governmental body's "reasonable rules to maintain order at a meeting" that "may not prevent or unreasonably impair" a person's right to record the meeting. OMA § 551.023. The governmental body also must either "make a tape recording" or "prepare and keep minutes" of each of its open meetings. *Id*. § 551.021(a). The

"minutes" must "state the subject of each deliberation" and "indicate each vote, order, decision, or other action taken." *Id*. § 551.021(b). And, as previously indicated, the OMA provides that:

> The minutes and tape recordings of an open meeting are public records and shall be available for public inspection and copying on request to the governmental body's chief executive officer or the officer's designee.

*Id*. § 551.022. Accordingly, because TGSL is subject to the OMA, the corporation must—

- • make its board meetings open to the public;

- • allow attendees to record those meetings;

- • prepare and keep minutes or make a tape recording of each such meeting;

- • include in the minutes the subject of each deliberation and indicate each vote, order, decision, or other action taken by TGSL in the meeting; and

- • make those minutes—which the OMA deems "public records"—available for inspection and copying upon request.

*See* OMA §§ 551.002, .021–.23. Consequently, to the extent York has requested records that constitute "minutes" from TGSL's board meetings, the OMA, standing alone, would plainly make these records "public records" and require TGSL to make them available to York for inspection and copying. *See id.* § 551.022. But the parties have joined issue in three ways with respect to whether this mandate from the OMA requires disclosure of the particular records in dispute here.

### *OMA vs. PIA*

First, TGSL asserts that the OMA mandates that governmental bodies disclose open-meeting "minutes" is qualified by the PIA's exceptions from mandatory disclosure. York and the Attorney General disagree, contending that the PIA exceptions do not apply to records made

public by the OMA. We agree with York and the Attorney General to the extent of concluding that the PIA exceptions on which TGSL relies do not limit its obligation under the OMA to disclose its "minutes."

Similar to OMA, the Texas Legislature enacted the PIA with the express purpose of providing the public "complete information about the affairs of government and the official acts of public officials and employees." PIA § 552.001(a); *Jackson v. State Office of Admin. Hearings*, 351 S.W.3d 290, 293 (Tex. 2011) (citing *City of Garland*, 22 S.W.3d at 355–56). The PIA is aimed at preserving a fundamental tenet of representative democracy: "that the government is the servant and not the master of the people," PIA § 552.001(a); *Jackson*, 351 S.W.3d at 293, and reflects the public policy that the people of Texas "remain[] informed so that they may retain control over the instruments they have created," PIA § 552.001(a); *see Jackson*, 351 S.W.3d at 293 (citing *Texas Comptroller of Pub. Accounts v. Attorney Gen. of Tex.*, 354 S.W.3d 336, 343 (Tex. 2010)). To advance these policy goals, the Legislature has directed that we liberally construe the PIA in favor of disclosure of requested information. PIA § 552.001; *Jackson*, 351 S.W.3d at 293 (citing *City of Garland*, 22 S.W.3d at 356).

Section 552.021 of the PIA creates a general right of public access to "public information" during the governmental body's normal business hours. PIA § 552.021. "Public information" is defined within the PIA as "information collected, assembled, or maintained under a law or ordinance or in connection with the transaction of official business" by or for a governmental body. *Id.* § 552.002(a). There is no dispute that all of the TGSL records in dispute, whether or not they are considered "minutes" under the OMA, are "public information" under the PIA.

11

Consequently, all of the records at issue would, all other things being equal, be subject to public disclosure by virtue of PIA section 552.021.

But subchapter C of the PIA qualifies the public's right of access to certain types of "public information." *See id.* §§ 552.101–.153. TGSL has invoked two such exceptions to resist disclosure under both the PIA and the OMA; section 552.104, which excepts "information that, if released, would give advantage to a competitor or bidder," *see id.* § 552.104, and section 552.110; subsection (b), which excepts "[c]ommercial or financial information for which it is demonstrated based on specific factual evidence that disclosure would cause substantial competitive harm to the person from whom the information was obtained," *see id*. § 552.110(b). However, both of these limitations are explicitly addressed solely to the right of public access created by PIA section 552.021. *See id*. §§ 552.104 ("Information is *excepted from the requirements of Section 552.021* if it is information that, if released, would give advantage to a competitor or bidder.") (emphasis added), .110(b) ("Commercial or financial information for which it is demonstrated based on specific factual evidence that disclosure would cause substantial competitive harm to the person from whom the information was obtained is *excepted from the requirements of Section 552.021.*") (emphasis added). They do not, in other words, purport to operate more generally against public-access or disclosure requirements created or imposed by other law. Consequently, these exceptions would not operate against the OMA's requirement that open-meeting "minutes" be made available upon request.

This relationship between these PIA exceptions and public-access requirements created by external law is further confirmed by section 552.006 of the PIA, which emphasizes that "[t]his chapter [of the PIA] does not authorize the withholding of public information or limit the

12

availability of public information to the public, except as expressly provided by this chapter." *Id*. § 552.006. Nothing in the text of PIA sections 552.104 or 552.110, subsection (b), expressly provides or authorizes TGSL to withhold or limit access to public information where the claimed right of access is based on law other than PIA section 552.021.

In contending otherwise, TGSL urges that the PIA and its exceptions should trump the OMA's public-access requirements regarding "minutes" because the PIA is the "more specific" of the two statutes. *See* Tex. Gov't Code § 311.021(2) (Code Construction Act provision providing that "a specific statutory provision prevails as an exception over a conflicting general provision"). As an initial observation, we question whether the PIA would be considered the "more specific" of the two statutes with regard to public access to TGSL's meeting minutes. While the PIA, and thus its exceptions, apply to "public information" generally, the OMA speaks specifically to open-meeting minutes, a narrow category of public information. *See* OMA §§ 551.022, 552.021. But this principle of statutory construction would not apply in the first place because it operates only where there is an irreconcilable conflict between two statutes, and there is none here—again, the PIA exceptions on which TGSL relies purport to operate only as against the duty of disclosure under PIA section 552.021, not as against other statutes like the OMA. *See DeQueen*, 325 S.W.3d at 637. Likewise, we would only resort to such canons of construction in the event of an ambiguity, *see id.* at 637, and there is none here: the OMA unambiguously makes TGSL's board "minutes" open to the public, and there is nothing in the two PIA exceptions on which TGSL relies that would limit that right. Finally, even if we agreed that the OMA is ambiguous in this regard, we would defer to the Attorney General's reasonable construction, *see Greater Houston P'ship v. Abbott*,

13

__S.W.3d__, No. 03–11–00130–CV, 2013 WL 491016, at *3 (Tex. App.—Austin Jan. 31, 2013, no pet. h.), which in this case is that the PIA exceptions do not apply to TGSL's minutes.

On the other hand, TGSL cites three Attorney General open records letter rulings that, in its view, reflect contrary conclusions that governmental bodies can withhold sensitive information from open-meetings minutes that must otherwise be disclosed under the OMA. *See* Tex. Att'y Gen. OR2011-09372; Tex. Att'y Gen. OR2010-13038; Tex. Att'y Gen. OR2008-14985. We are unpersuaded that these rulings are inconsistent with the Attorney General's decision below.[4] In two of the decisions, it is unclear whether minutes are among the disputed records that the Attorney General is addressing. *See* Tex. Att'y Gen. OR2010-13038; Tex. Att'y Gen. OR2008-14985. As for the third, letter ruling 2011-09372, it is clearly distinguishable from the situation here. Although the Attorney General determined that the City of Plano could withhold from its minutes the civil-service promotional examination that it had discussed at one of its open meetings, it did so in reliance on a provision of the Local Government Code that expressly made the exam confidential and prohibited its disclosure. *See* Tex. Att'y Gen. OR2011-09372, at 2 (citing Tex. Loc. Gov't Code § 143.032(h) (making it misdemeanor offense to reveal promotional examination)). By contrast, TGSL does not rely upon any provision of the PIA or other statute that makes its minutes confidential or otherwise prohibits their disclosure, but solely upon exceptions to mandatory disclosure compelled by PIA section 552.021.[5] In sum, these letter rulings do not provide support

---

[4] The Attorney General also urges that these open-records letter rulings, which provide advice to other governmental bodies, be given less deference than his open-records decisions, which address actual disputes under the PIA. *See Vista Med. Ctr. Hosp. v. Texas Mut. Ins. Co.*, S.W.3d, 2013 WL 2631732, at *13 (Tex. App.—Austin June 6, 2013, no pet. h.) (discussing deference applicable to different types of agency pronouncements). We need not explore that question here.

[5] We express no comment as to whether or how the PIA provisions making records confidential or prohibiting their disclosure, as opposed merely to creating exceptions to mandatory

for TGSL's position that the PIA exceptions upon which it relies trump the OMA's plain requirement that a governmental entity's "minutes" are public records that must be disclosed upon request.

### *"Minutes" subject to disclosure under the OMA*

TGSL next argues that the "minutes" made "public records" and subject to disclosure under the OMA encompassed only the portions of its board meeting minutes that satisfied the OMA's minimum requirements for the content of the "minutes" that governmental bodies must keep under that act. *See* OMA § 551.021(b). Specifically, TGSL reasons that any portions of its minutes that divulge more than "the subject of each deliberation" and "each vote, order, decision, or other action taken," the content required by the OMA, *see id.* § 551.021(b), are not "minutes" that the OMA requires it to disclose. Similarly, TGSL maintains that the OMA does not require it to disclose any attachments to its minutes because these documents are not, in themselves, "minutes," and are certainly not the type of "minutes" contemplated by the OMA. Again, we disagree with TGSL.

Although the OMA specifies minimum information that "minutes" must convey about an open meeting, it does not purport to define that term. *See id.* In the absence of statutory definitions, we look to the ordinary meaning of "minutes," or, alternatively, to a technical meaning the term has acquired,[6] and from either standpoint "minutes" simply refer to the record or notes of a meeting or proceeding, whatever they might contain. *See Webster's Third New Int'l Dictionary*

---

disclosure under section 552.021, would limit the OMA's requirement of public access to open-meeting "minutes." *See, e.g.*, PIA §§ 552.101 (excepting "information considered to be confidential by law, either constitutional, statutory, or by judicial decision"), .103 (litigation exception), .110(a) (trade secrets).

[6] *See, e.g.*, *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625 (Tex. 2008) (noting that "we construe the statute's words according to their plain and common meaning" unless they have been defined by statute or have acquired any technical or particular meaning).

1440 (2002) (a "record of proceedings"); *Black's Law Dictionary* 1087 (9th ed. 2009) ("[m]emoranda or notes of a transaction, proceeding, or meeting"). Thus, the record of the proceedings at a meeting of directors or shareholders of a company is called the "minutes." Nothing in these definitions of "minutes" imply any sort of limitation on the information about the proceedings that a body might choose to include in the minutes.

The TGSL board meeting minutes at issue here, as well as the attachments, plainly fall within these definitions of "minutes." Those minutes are labeled collectively as "[year] Board Minutes" and individually as "Minutes, Board of Directors, [specific date]," and include exhibits that are referenced in and attached to the minutes. Further, it appears that most of the exhibits were "incorporated into [the minutes] for all purposes as if set forth verbatim." But even if that had not been the case, "attaching" referenced documents to minutes necessarily made them a part of TGSL's "minutes," and subject to disclosure under the OMA.

Alternatively, to the extent the OMA might contemplate a narrower definition of "minutes" that are made public by that statute, TGSL's decision to include additional information with those "minutes"—a type of record that the OMA deems public records subject to disclosure—would amount to voluntary disclosure of the additional information under the PIA. Section 552.007 of the PIA emphasizes that it "does not prohibit a governmental body . . . from voluntarily making part or all of its information available to the public, unless the disclosure is expressly prohibited by law or the information is confidential by law." PIA § 552.007(a). As noted, TGSL does not assert that any of the information at issue is made confidential by law or that disclosure is prohibited, as opposed to merely being excepted from mandatory disclosure under

16

PIA section 552.021. And once this voluntary disclosure has occurred, TGSL's minutes "must be made available to any person," including York. *Id.* § 552.007(b).

In contending otherwise, TGSL cites *Houston Municipal Employees Pension System v. Abbott*, 192 S.W.3d 862 (Tex. App.—Texarkana 2006, pet. denied), in which the Texarkana Court of Appeals suggested that unspecified documents that had been discussed in a governmental body's minutes and "filed along with the minutes" were not equivalent to being part of the "minutes" made open to the public under the OMA. *Id.* at 866. But this issue was not before the court and, as a result, the *Abbott* opinion provides very little information about the documents' relationship to the minutes—the court simply notes that the documents were "considered" during the meeting and then were "filed" with the minutes. To the extent *Houston Municipal* stands for the proposition that the OMA confines the "minutes" subject to disclosure solely to information regarding "the subject of each deliberation" and "each vote, order, decision, or other action taken," we respectfully disagree, for reasons we have already explained.

In sum, we hold that under the OMA's plain language, TGSL must disclose to York its board meeting minutes, including any attachments or exhibits, and that the PIA exceptions it claims are unavailing. Accordingly, we overrule TGSL's issues challenging the district court's summary judgment requiring disclosure of the disputed excerpts from "the actual provisions of the Minutes themselves," and sustain York's challenge to the district court's judgment permitting TGSL to withhold attachments and exhibits to the minutes, including the President's Reports and Strategic Plan.

**Pricing information**

The foregoing holdings resolve the parties' dispute with respect to all records except the pricing information contained in TGSL's VFA application, the only one to which York claims a right of access solely under the PIA and not the OMA.[7] York urges that the district court erred in denying his motion for summary judgment seeking disclosure of this information, and TGSL and the Attorney General counter that we should instead affirm. We agree with TGSL and the Attorney General.

A party seeking to withhold public information requested under the PIA has the burden of proving that an exception to disclosure applies. *See Thomas v. Cornyn*, 71 S.W.3d 473, 488 (Tex. 2002); *Arlington Indep. Sch. Dist. v. Texas Att'y Gen.*, 37 S.W.3d 152, 157 (Tex. App.—Austin 2001, no pet.). TGSL has maintained that the pricing information contained in its VFA application to the federal government is shielded from mandatory disclosure by PIA section 552.104, which, again, excepts "information, that, if released, would give advantage to a competitor or bidder." *See* PIA § 552.104. The Attorney General has construed PIA section 552.104 to impose a two-part test to qualify for this exception. *See* Tex. Att'y Gen. ORD-593 (1991). First, the entity seeking to avoid disclosure must show that it has a specific marketplace interest and, second, that release of the information requested would cause specific harm to its marketplace interests in a particular competitive situation. *Id.* TGSL and York do not dispute that this is a reasonable construction of PIA section 552.104, so we will apply it here.

---

[7] Accordingly, we do not reach the parties' additional or alternative arguments that assume TGSL could assert PIA exceptions to withhold "minutes" made public by the OMA. *See* Tex. R. App. P. 47.1.

18

To meet this two-part test and establish the applicability of section 552.104, TGSL presented summary-judgment evidence explaining the legal and competitive landscape surrounding its VFA application. In 2010, the United States Congress enacted legislation that significantly revamped the federal student-loan program, including eliminating the fees paid to private agencies acting as intermediaries in providing loans to college students and mandating that all future student loans be made directly from the federal government rather than through intermediate, private agencies. *See* Health Care and Education Reconciliation Act of 2010 Pub. L. 111-152, 124 Stat. 1029 (HCERA). In 2011, partly in response to HCERA, the DOE published a notice in the Federal Register seeking proposals from guaranty agencies to enter into VFAs with the DOE. *See* Federal Family Education Loan Program, 76 Fed. Reg. 31312, 31312–31317 (May 31, 2011). VFAs, which existed before the 2010 legislative reforms, allow the DOE to enter into more flexible agreements with guaranty agencies—i.e., to waive certain statutory requirements—to encourage development of programs and techniques to help borrowers avoid student-loan default and all of its negative consequences. *See id.* at 31313. Acknowledging the loss of revenue facing the guaranty agencies as a result of HCERA's reforms and the potential deleterious effect of those losses on the guaranty agencies' ability to meet their prior student-loan responsibilities, the DOE's 2011 notice for VFA bids indicated the DOE's intent to establish new guaranty agency structures and financing mechanisms. *See id.* at 31314. Specifically, the 2011 notice sought proposals "from guaranty agencies . . . that will lead to the development of VFAs that will enhance the integrity and stability of the FFELP Program, improve services to students, schools and lenders, and use Federal resources more cost-effectively and efficiently." *See id.* at 31312. The deadline for submission of bids was August 1, 2011. *Id.* And as part of the

request for bids, the DOE indicated that any "pricing and financing information included in the proposals" would be exempt from disclosure under the federal public information act "as confidential business information." *See id.* at 31317. TGSL submitted two bids to the DOE, both seeking to provide services in "Lender Claims/Collections," which TGSL maintains is the only "financially rewarding VFA" area.

Given the changes in the student-loan marketplace resulting from HCERA's reforms and the potential financial impact of that legislation, TGSL asserts, and the Attorney General agrees, that the competitive award of the VFAs creates a marketplace interest for TGSL. York does not dispute that TGSL satisfied the first element of the Attorney General's test for applying PIA section 552.104, but complains that because the bids have already been submitted, TGSL can point to no specific harm that the release of this information would cause. To the contrary, TGSL presented uncontroverted summary-judgment evidence that the DOE has not yet awarded any of the VFAs or provided a definite timeline for when it would do so, and that it is still negotiating with bidders. TGSL's evidence also established that the corporation would be harmed in its negotiating process if the pricing information becomes public because, until the DOE awards the contracts, TGSL and presumably its competitors are free to vary previously submitted proposals and negotiate terms and conditions. Based on the evidence, TGSL has shown that release of the pricing information will cause it harm. Accordingly, we hold that TGSL's pricing information in its application to the DOE is protected from disclosure under PIA section 552.104.

Finally, while disclaiming any reliance of a subject-matter-waiver theory of public access to the pricing information, York asserts that the mere fact that the TGSL's VFA application was discussed in an open meeting makes the pricing information included within that VFA

20

application—but that is not revealed in any minutes or attachments, or was even discussed in an open meeting—subject to disclosure under the OMA. We disagree. There is nothing in the OMA to suggest that simply mentioning a document makes the document a public record, nor is there anything in the PIA suggesting that mentioning the existence of a document somehow waives any applicable exceptions to disclosure of the contents of that document.

We overrule York's challenge to the district court's judgment permitting TGSL to withhold the pricing information contained in the corporation's VFA application.

**Attorney's fees**

Finally, York challenges the district court's judgment denying him recovery of any attorney's fees. Where, as here, a governmental body sues to challenge an Attorney General's open-records decision, the PIA grants discretion to the trial court to award litigation costs and reasonable attorney's fees "incurred by a plaintiff or defendant who substantially prevails." PIA § 552.323(b). In exercising such discretion, "the court shall consider whether the conduct of the governmental body had a reasonable basis in law and whether the litigation was brought in good faith." *Id*.

In support of summary judgment on his attorney's fee claim, York presented an affidavit in which he purported to prove up attorney's fees of approximately $25,000, plus contingent appellate fees, that he had "incurred" or would "incur" in the case.[8] In its cross-motion for summary judgment seeking to deny York attorney's fees, filed on the same day as York's motion, TGSL

---

[8] We observe that York attributed these fees not only to legal services he had provided personally, but also to services provided by two associate attorneys and paralegals in his law firm—McGinnis, Lochridge, and Kilgore, L.L.P., where he is presently of counsel—although he did not indicate the portions of the fees that were or would be attributable to the work of each. However, York has not argued that this distinction is material to our analysis.

21

asserted that even if York "substantially prevailed" in the litigation, he was barred from recovery because it is established that pro se litigants, including attorneys like York who litigate pro se, cannot, as a matter of law, "incur" attorney's fees (i.e., become liable for them) as the PIA requires. *See Jackson*, 351 S.W.3d at 299–300.[9]  In his response to TGSL's summary-judgment motion, York shifted focus and presented a second affidavit in which he averred that the attorney's fees to which he had previously testified had, in fact, been incurred by a client who "wishes to remain anonymous," who had requested York to request the information from TGSL, was liable for the fees, and had paid some of the fees and would be billed for the others.

Emphasizing this second affidavit, his evidence proving up attorney's fees that "someone is liable for," and the PIA's provisions allowing a real party in interest behind a request to remain anonymous,[10] York argues on appeal that the district court abused its discretion by "essentially forc[ing] York's client to make the untenable choice between surrendering the anonymity he, she, or it is entitled to under the PIA or recovering attorney's fees."  However, we conclude that this choice is imposed by the PIA itself.

PIA section 552.323, the provision that governs York's claim for attorney's fees, permits recovery solely by a "plaintiff or defendant" in a suit by a governmental body

---

[9]  *Jackson* also held that a PIA requestor cannot use a duplicative or incidental claim under the Uniform Declaratory Judgments Act (UDJA) as a vehicle to recover attorney's fees that cannot be recovered under the PIA.  *See Jackson v. State Office of Admin. Hearings*, 351 S.W.3d 290, 300–01 (Tex. 2011) (citing *MBM Fin. Corp. v. Woodlands Operating Co.*, 292 S.W.3d 660, 668 (Tex. 2009); *John G. & Marie Stella Kenedy Mem'l Found. v. Dewhurst*, 90 S.W.3d 268, 289 (Tex. 2002)).  Although York pled and argued below that he was entitled to attorney's fees under the UDJA, on appeal he appears to acknowledge that his fees claim is governed instead by the PIA.

[10]  *See* PIA § 552.222(a) ("The officer for public information and the officer's agent may not make an inquiry of a requestor except to establish proper identification or except [as necessary to clarify the request] . . . .").

seeking declaratory relief against an Attorney General decision ordering disclosure of records.  PIA §§ 552.323, .324.  Under the PIA, the potential "plaintiffs" in such a suit are limited to the "governmental body, officer for public information, or other person or entity that files a suit seeking to withhold information from a requestor," such as an affected third party,[11] and the defendant" is the Attorney General.  *See id*. § 552.324.  While the "requestor" cannot be named as a defendant in the first instance, he, she, or it "is entitled to intervene in the suit."  *See id*. § 552.325(a).  While York presented summary-judgment evidence that he had acted on behalf of an unidentified real party in interest, it remains that he, not the client, was the "requestor" under the PIA.  Consequently, York, not the unidentified client, was the person with standing to intervene in TGSL's suit and thereby become a "defendant" who could potentially recover attorney's fees.  And because York cannot "incur" attorney's fees as a matter of law where he has acted pro se, *see Jackson*, 351 S.W.3d at 299–300, the district court properly granted TGSL's summary-judgment motion against that claim.[12]

---

[11] *See Boeing Co. v. Abbott*, —S.W.3d—, No. 03–10–00411–CV, 2012 WL 753170, at * 8 (Tex. App.—Austin Mar. 9, 2011, pet. filed) (discussing rights of third party to prevent governmental body from disclosing public information) (Pemberton, J., concurring).

[12] We would add that even if York's anonymous client could, as a matter of law, "incur" the attorney's fees York proved, such that the district court erred in granting TGSL summary judgment on that claim, the court would not have erred in denying York's cross motion, for at least two reasons: (1) York's own summary-judgment evidence raises a fact issue as to whether the client or York was personally liable for the fees; and (2) York did not establish as a matter of law (i.e., that the district court had no discretion to rule otherwise) that he was entitled to attorney's fees under the standard imposed by PIA section 552.323(b).  The district court would not have abused its discretion in concluding that TGSL had a reasonable basis in law for resisting disclosure, had litigated the issue in good faith, and that it exercised its discretion not to award York attorney's fees.  *See* PIA § 552.323(b).

## CONCLUSION

In light of the foregoing holdings, we:

- Affirm the district court's summary judgment that TGSL must disclose "the actual provisions of the Minutes themselves," including those pertaining to EAS.

- Reverse the district court's summary judgment that TGSL is not required to disclose its Strategic Plan, President's Reports, and any other attachments or exhibits to its minutes, and render judgment that TGSL must make these records available to York.

- Affirm the district court's summary judgment that TGSL is not required to disclose the pricing information in its VFA application.

- Affirm the district court's summary judgment denying York recovery of attorney's fees.

_____

Bob Pemberton, Justice

Before Justices Puryear, Pemberton, and Rose

Affirmed in part; Reversed and Rendered in part

Filed:   August 8, 2013