# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-11-00179-CV

**The Attorney General of Texas and The Commissioner of Insurance, Appellants**

**v.**

**Farmers Insurance Exchange, Fire Insurance Exchange,
Mid-Century Insurance Company of Texas, Texas Farmers Insurance Company, and
Farmers Texas County Mutual Insurance Company, Appellees**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 261ST JUDICIAL DISTRICT
### NO. D-1-GN-11-000692, HONORABLE JOHN K. DIETZ, JUDGE PRESIDING

## O P I N I O N

This is an appeal involving public-information requests made to the Texas Department of Insurance (TDI) for information filed with that agency by appellees Farmers Insurance Exchange, Fire Insurance Exchange, Mid-Century Insurance Company of Texas, Texas Farmers Insurance Company, and Farmers Texas County Mutual Insurance Company (collectively "Appellee Insurers"). Based on our conclusion that the requested information was open to public inspection without exception under the applicable version of the Insurance Code, we reverse the district court's judgment and render judgment in favor of appellants the Attorney General of Texas and the Commissioner of Insurance (collectively "the State").

### Factual and procedural background

Appellee Insurers write residential property insurance and private passenger automobile insurance in Texas. Their rates are regulated by the Insurance Code. *See* Tex. Ins. Code

§ 2251.001(1) (purposes); *see generally id.* § 2251.001–.253 (provisions of chapter 2251, titled "Rates"). Under the Insurance Code's ratemaking provisions, each insurer must file its rates and other supporting information with TDI, but it may implement those filed rates immediately without prior approval of TDI. *See id.* § 2251.101(a) (commonly referred to as "file and use"). Chapter 2251 specifies certain information that insurers must include with each rate filing, but it also authorizes TDI to promulgate rules requiring additional information. *See id.* § 2251.101(a)–(b); *see also* 28 Tex. Admin. Code § 5.9332 (2013) (TDI, Filing Requirements). Under the version of the Insurance Code applicable to this case, the insurer's rate filings, and any supporting documents, are "open to public inspection as of the date of the filing." *See* Act of May 24, 2005, 79th Leg., R.S., ch. 727, § 2, sec. 2251.107, 2005 Tex. Gen. Laws 1752, 2138, *amended by* Act of May 28, 2011, 82d Leg., R.S., ch. 1146, § 2, sec. 2251.107, 2011 Tex. Gen. Laws 2950, 2957 (current version codified at Tex. Ins. Code § 2251.107) (hereinafter cited as "Former Tex. Ins. Code § 2251.107").

During 2008 and 2009, TDI received four open-records requests for rate-filing information that had been submitted by Appellee Insurers under the Insurance Code file-and-use provisions discussed above. Concluding that the Appellee Insurers' proprietary interests might be implicated, TDI notified them of the request and sought an opinion from the Attorney General as to whether the Public Information Act (PIA) required it to produce the rate filings. *See* Tex. Gov't Code § 552.301 (PIA provision requiring governmental body that receives written request for information it wishes to withhold to ask for decision from attorney general); *see generally id.* §§ 552.001–.353 (provisions of PIA). The Appellee Insurers filed responses with the Attorney General, claiming, among other things, that information responsive to the requests was protected from disclosure under certain PIA exceptions to disclosure. *See* Tex. Gov't

2

Code §§ 552.101–.153 (PIA exceptions to disclosure). The Attorney General, in turn, determined that because former section 2251.107 of the Insurance Code specifically made rate filings public, those rate filings could not be withheld under any of the PIA exceptions. *See* Tex. Att'y Gen. OR2009-18398; Tex. Att'y Gen. OR2009-01360; Tex. Att'y Gen. OR2008-05288; Tex. Att'y Gen. OR2007-1222.

In response to these letter decisions, Appellee Insurers filed separate petitions in Travis County District Court against the State, seeking, among other things, declaratory judgment that their respective rate filings were protected from disclosure under PIA trade-secret exceptions. *See* Tex. Gov't Code §§ 552.110 (trade-secret exception), .3215 (declaratory judgment). After the separate cases were consolidated into one cause, the parties filed cross motions for summary judgment on the narrow issue of whether the PIA's exceptions to disclosure apply to requests for rate-filing information filed with TDI pursuant to chapter 2251 of the Insurance Code. The district court granted Appellee Insurers' motion and denied the State's motion, holding that—

> The information which is made open to public inspection under Tex. Ins. Code § 2251.107 is public information which is subject to the Public Information Act, Tex. Gov't Code §§ 552.001, *et seq*.

Upon joint motion of the parties, the district court severed the claim resolved by the summary judgment and made it a final judgment for purposes of appeal. It is from this judgment that the State now appeals.[1]

---

[1] Because we are presented with only the narrow issue of whether the information made open to public inspection under Texas Insurance Code section 2251.107 is subject to the provisions of the PIA, we express no comment as to whether or how the common law might limit disclosure of this information.

**Standard of review**

We review the district court's summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). When, as here, both parties move for summary judgment on an overlapping issue and the district court grants one motion and denies the other, we review the summary-judgment evidence presented by both sides, determine the question presented, and render the judgment that the district court should have rendered. *Texas Workers' Comp. Comm'n v. Patient Advocates of Tex.*, 136 S.W.3d 643, 648 (Tex. 2004).

**Discussion**

In two issues on appeal, the State challenges the district court's judgment that PIA exceptions to disclosure apply to rate information filed under chapter 2251 of the Insurance Code. Specifically, the State argues that under a plain-meaning review of former section 2251.107, the rate-filing information filed under chapter 2251 of the Insurance Code is, without exception, open to public inspection upon its filing with TDI. The Appellee Insurers, in turn, argue that the Attorney General's interpretation of former section 2251.107 is too narrow and fails to account for the Legislature's intent in enacting the PIA and former section 2251.107. Thus, we are presented with an issue of statutory construction—i.e., did the Legislature intend that former section 2251.107's mandatory public-inspection requirement be limited by the PIA's exceptions to disclosure. Our resolution of this question turns on the interplay, if any, between former section 2251.107 of the Insurance Code and the PIA:

***Chapter 2251 rate-filing information***: Former section 2251.107 of the Insurance Code provides that "Each filing made, and any supporting information filed, under [Insurance Code chapter 2251] is open to public inspection as of the date of the filing. *See* Former Tex. Ins. Code

4

§ 2251.107. There is no dispute that requested rate-filings and supporting information filed by Appellee Insurers with TDI were filed to comply with chapter 2251's rate-filing requirements. As such, they are open to public inspection under former section 2251.107.

*The PIA and its exceptions to disclosure*: The PIA guarantees access to "public information." *See* Tex. Gov't Code § 552.021 (providing that public information "is available to the public"). "Public information" is defined within the PIA as "information collected, assembled, or maintained under a law or ordinance or in connection with the transaction of official business" by or for a governmental body. *Id.* § 552.002(a). There is no dispute that the rate-filing information filed by Appellee Insurers with TDI would fall under this definition of public information. And public information, absent some other law making it confidential, is subject to public disclosure under PIA section 552.021, unless it qualifies for one of the exceptions to disclosure provided in subchapter C of the PIA, which "embrace the understanding that the public's right to know is tempered by the individual and other interests at stake in disclosing the information." *Texas Dep't of Pub. Safety v. Cox Tex. Newspapers, L.P.*, 343 S.W.3d 112, 114 (Tex. 2011); *see* Tex. Gov't Code §§ 552.101–.153 (subchapter C exceptions). For example and of relevance here, a trade secret is excepted from PIA disclosure. *See* Tex. Gov't Code § 552.110. But these exceptions, including the trade-secret exception, apply only to information made available by the PIA. *See id.* §§ 101–.115 (providing "Information is excepted from the requirements of Section 552.021 if . . . ." or similar language); *York v. Texas Guar. Student Loan Corp.*, No. 03-12-00309-CV, __S.W.3d__, 2013 WL 4056182 at *6–7 (Tex. App.—Austin Aug. 8, 2013, no pet. h.) (noting that PIA exceptions to disclosure apply only where the right of public access was created by the PIA).

We review issues of statutory construction de novo. *See Texas Lottery Comm'n v. First State Bank of DeQueen*, 325 S.W.3d 628, 635 (Tex. 2010); *State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006). Our primary objective in statutory construction is to give effect to the Legislature's intent. *Combs v. Roark Amusement & Vending, L.P.*, __S.W.3d__, No. 11–0261, 2013 WL 855737, at * 2 (Tex. Mar. 8, 2013); *Shumake*, 199 S.W.3d at 284. We seek that intent "first and foremost" in the statutory text. *Lexington Ins. Co. v. Strayhorn*, 209 S.W.3d 83, 85 (Tex. 2006); *see Roark*, 2013 WL 855737 at *2 (noting that "the truest manifestation of what lawmakers intended is what they enacted"). "Where text is clear, text is determinative of that intent." *Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 437 (Tex. 2009) (op. on reh'g) (citing *Shumake*, 199 S.W.3d at 284; *Alex Sheshunoff Mgmt. Servs. v. Johnson*, 209 S.W.3d 644, 651–52 (Tex. 2006)); We give such statutes their plain meaning without resort to rules of construction or extrinsic aids. *DeQueen*, 325 S.W.3d at 635, 637 (branding reliance on rules of construction or extrinsic aids as improper because "when a statute's language is clear and unambiguous, it is inappropriate to resort to rules of construction or extrinsic aids to construe the language" (quoting *City of Rockwall v. Hughes*, 246 S.W.3d 621, 626 (Tex. 2008)). Only when statutory text is susceptible to more than one reasonable interpretation is it appropriate to look beyond its language for assistance in determining legislative intent. *See Roark*, 2013 WL 855737 at *2; *In re Smith*, 333 S.W.3d 582, 586 (Tex. 2011).

We agree with the State that under a plain-meaning review of the relevant statutes, the rate-filing information at issue in this case is open to public inspection under the Insurance Code without regard to the disclosure exceptions provided by the PIA. Former section 2251.107 specifically, clearly, and unequivocally makes this so:

6

Each filing made, and any supporting information filed, under [Insurance Code chapter 2251] is open to public inspection as of the date of the filing.

*See* Former Tex. Ins. Code § 2251.107.  The statute does not refer to the PIA or incorporate any of its procedures or exceptions.  *See id.*  It does not describe any exceptions, nor suggest that there are any.  *See id.*  And it does not contemplate any intermediate process between the filing of the rate information and the rate filing being open to public inspection.  *See id.*  In fact, by specifically requiring that rate filings be "*open* to public inspection," *see id.*, as opposed to the PIA's requirement that public information be "*available* to the public," *see* Tex. Gov't Code § 552.021, the text of former section 2251.107 suggests that the access to the rate-filing information is unrestricted.  *See Webster's Third New Int'l Dictionary* 1579 (2002) (defining "open" as "completely free from concealment:  exposed to general or particular perception or knowledge"); *see also id.* at 150 (defining "available" as "accessible" or "may be obtained").  Likewise, the PIA exceptions, by their own terms, limit their application to information made public by the PIA and do not authorize withholding information that is made public by other law.  *See York*, 2013 WL 4056182 at *6–7.

The Appellee Insurers make several arguments that we find incompatible with the statutory text.  First, they argue that because the rate-filing information is undisputably "public information" under the PIA, *see* Tex. Gov't Code § 552.002, "it is *a fortiori* public information subject to the PIA" and its exceptions.  In other words, they contend that former section 2251.107 does nothing more than to establish that the rate filings are public information.  Appellee Insurers' interpretation here renders former section 2251.107 redundant at best and meaningless at worst because, even in the absence of former section 2251.107, the rate-filing information would qualify as "public information" under the PIA as it is "information that is collected . . . by a governmental

7

body." *See id*. (defining "public information"). In other words, former section 2251.107 would have no reason to exist if it serves only to make the rate filings public information under the PIA because the PIA already does that. In contrast, a plain-meaning interpretation of former section 2251.107—i.e., that the rate-filing information is open to public inspection as of the date it is filed—not only gives effect to the words the Legislature enacted but it also avoids making this provision of the Insurance Code redundant or meaningless. *See In re Estate of Nash*, 220 S.W.3d 914, 918 (Tex. 2007) (noting that courts "should avoid, when possible, treating statutory language as surplusage"); *Larry Koch, Inc. v. Texas Natural Res. Conservation Comm'n*, 52 S.W.3d 833, 838 (Tex. App.—Austin 2001, pet. denied) ("We will avoid a construction that creates a redundancy or renders a provision meaningless.").

The plain-meaning interpretation likewise refutes Appellee Insurers' argument that the PIA exceptions necessarily apply to all "public information." Former section 2251.107 makes no reference to any exceptions or intermediate process in the rate-filing information being open to public inspection, and the use of the "open" itself suggests that there are to be no restrictions to that public inspection. But more importantly, Appellee Insurers' assertion that PIA exceptions apply to all "public information," is not correct. As discussed above, the PIA exceptions are explicitly addressed solely to the right of public access created by PIA section 552.021. *See* Tex. Gov't Code §§ 552.101–.115 (providing "Information is excepted from the requirements of Section 552.021 if . . . ." or similar language). They do not, in other words, apply to public-access or disclosure requirements created or imposed by other law. *See York*, 2013 WL 4056182 at *6–7 (noting that PIA exceptions to disclosure apply only where the right of public access was created by the PIA). Thus for example, as we recently decided in *York*, the PIA exceptions to disclosure do not operate against

8

the Open Meetings Act's requirement that open-meeting minutes be made available to the public on request. *See id.*; *see also* Tex. Gov't Code § 551.022 (providing that "[t]he minutes and tape recordings of an open meeting are public records and shall be available for public inspection"). Finally, PIA section 552.006 emphasizes that the PIA "does not authorize the withholding of public information or limit the availability of public information to the public, except as *expressly provided by this chapter*." Tex. Gov't Code § 552.106 (emphasis added). Nothing in the text of the PIA exceptions provides or authorizes withholding or limiting access to public information where the claimed right of access is based on law other than PIA section 552.021.

The Appellee Insurers also urge us to consider and give overriding weight to section 2251.107's legislative history. Specifically, harkening back to their argument that all public information is necessarily subject to the PIA and its exceptions, they emphasize that when the predecessor statute to former section 2251.107 was first enacted in 1991, its title labeled the rate-filing information as "public information." *See* Act of May 27, 1991, 72d Leg., R.S., ch. 242, § 2.15, 1991 Tex. Gen. Laws 939, 961. Likewise, Appellee Insurers note that when the Legislature created the new regulatory scheme for property and casualty insurance in 2003, it added a provision that maintained the confidentiality of confidential information reviewed by the Public Insurance Counsel and a provision that the insurers' credit-scoring models were not subject to the PIA. *See* Act of June 2, 2003, 78th Leg., R.S., ch. 206, § 6.11, 2003 Tex. Gen. Laws 907, 931. They also point to failed efforts in 2003 to add language that would have made the PIA expressly inapplicable to certain rate filings; specifically a failed amendment that would have provided that PIA exceptions to disclosure did not apply to rate filing information, *see* H. J. of Tex., 78th Leg., R.S., 3545 (2003), and another failed amendment that would have required the Commissioner to publish on TDI's

9

website "an exact copy of [a carrier]'s entire rate filing," *see id.* at 3525. Finally, the Appellee Insurers offer the Legislature's 2011 change to former section 2251.107, which specifically makes the rate-filing information of Insurance Code chapter 2251 subject to the PIA and its exceptions:

> Each filing made, and any supporting information filed, under this chapter is public information subject to Chapter 552, Government Code [the PIA], including any applicable exception from required disclosure under that chapter.

Act of May 28, 2011, 82d Leg., R.S., ch. 1146, § 2, sec. 2251.107, 2011 Tex. Gen. Laws 2950, 2957 (codified at Tex. Ins. Code § 2251.107(a)). They suggest that this change was the Legislature's response to the Attorney-General letter opinions and district court judgment underlying this case. They assert, in fact, that the Legislature's 2011 change to section 2251.107 "ratified" the district court's decision in this case. But even if we were to accept Appellee Insurers' interpretation of this legislative history as correct, the supreme court has made it clear that we may not look to extrinsic aids such as legislative history unless the plain language of the statute is ambiguous. *See Molinet v. Kimbrell*, 356 S.W.3d 407, 414 (Tex. 2011) (noting that "the Legislature expresses its intent by the words it enacts and declares to be the law," not legislative history); *Entergy*, 282 S.W.3d at 443 (responding to suggestion that it consider legislative history by explaining that "we have been clear that we do not resort to such extrinsic aids unless the plain language is ambiguous"). And as set forth above, former section 2251.107 clearly and unambiguously makes rate-filing information open to public inspection as of the date of filing. *See* Former Tex. Ins. Code § 2251.107. While we are not unsympathetic to the trade-secret concerns expressed by Appellee Insurers, we are not inclined to exceed our authority as an intermediate appellate court by looking behind the clear text of this provision.

10

Finally, the Appellee Insurers urge us to consider the consequences of our interpretation of former section 2251.107 from a constitutional standpoint. *See* Tex. Gov't Code § 311.023(5) (allowing courts to consider "consequences of a particular construction" in construing a statute); *State v. Hodges*, 92 S.W.3d 489, 494 (Tex. 2002) (noting that statutory construction allows courts to consider consequences of particular construction). First, they argue that interpreting former section 2251.107 to preclude application of PIA exceptions violates the Texas Constitution's separation-of-powers doctrine. *See* Tex. Const. art. II, § 1 (limiting government branch's ability to interfere with other branches of government). Specifically, Appellee Insurers contend that our interpretation allows the Insurance Commissioner to determine what will be and what will not be public information despite the fact that the Legislature did not delegate that authority to the Insurance Commissioner. We do not agree that this is the effect here. The Insurance Code tasks the Commissioner with deciding what additional information TDI requires for insurers' rate filings. *See* Tex. Ins. Code § 2251.101. It is the Legislature's text, however, that clearly makes the rate-filing information open to public inspection. *See id.* As such, there has been no improper delegation of Legislative authority. *See Texas Boll Weevil Eradication Found., Inc. v. Lewellen*, 952 S.W.2d 454, 465–70) (Tex. 1997) (discussing delegation of Legislative authority in context of separation-of-powers doctrine).

In their second constitutional argument, Appellee Insurers contend that our interpretation of former section 2251.107 violates the takings clause of the U.S. and Texas constitutions by making Appellee Insurers' trade secrets publicly available without the due-process protections afforded by the PIA. *See* U.S. Const. amend. V ("nor shall private property be taken for public use, without just compensation"); Tex. Const. art. I, § 17 ("[n]o person's property

11

shall be taken, damaged, or destroyed for or applied to public use without adequate compensation being made"). We disagree. Even if we assume that Appellee Insurers could establish that the State intentionally performed certain acts that resulted in a "taking" of property for public use, *see General Servs. Comm'n v. Little–Tex Insulation Co.*, 39 S.W.3d 591, 598 (Tex. 2001) (elements of takings claim), that taking would only be unconstitutional if it remained uncompensated, *see Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 194 (1985) ("The Fifth Amendment does not proscribe the taking of property; it proscribes taking without just compensation."). Here, because Appellee Insurers have not asserted any claims, we cannot know whether they could establish a takings claim or whether, if established, that taking would remain uncompensated. We do know, however, that Texas has a compensation process for governmental takings. *See State v. Holland*, 221 S.W.3d 639, 643 (Tex. 2007) ("[S]overeign immunity does not shield the State from a claim based upon a taking under Article I, section 17 of the Texas Constitution, known as the "takings clause."); *Steele v. City of Houston*, 603 S.W.2d 786, 791 (Tex. 1980) ("The Constitution itself is the authorization for compensation for the destruction of property and is a waiver of governmental immunity for the taking, damaging or destruction of property for public use."). Accordingly, our interpretation of former section 2251.107 would not, on this record, violate the takings clause. *See Williamson Cnty.*, 473 U.S. at 194 ("If the government has provided an adequate process for obtaining compensation, and if resort to that process 'yields just compensation,' then the property owner 'has no claim against the Government' for a taking." (quoting *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1013 (1984))).

Although we have rejected certain of Appellee Insurers' arguments, we do acknowledge that they raise an important policy question regarding the need for trade-secret

12

protection. For example, Appellee Insurers contend that the PIA and not the Insurance Code should shape this State's policy regarding the protection of trade secrets. They also argue that Insurance Code section 2251.106, which maintains the confidentiality of information requested by the Public Insurance Counsel, indicates that at least some information associated with Insurance Code chapter 2251 must be confidential. *See* Tex. Ins. Code § 2251.106. Finally, they point out that insurers must file the rate-filing information with TDI under chapter 2251 or risk having their rates disapproved. These policy arguments, however, are better directed to the Legislature than the courts.[2] And in fact, considering the changes to the Insurance Code in 2011, the Legislature appears to have addressed these concerns. Nevertheless, on the record before us and given the plain language of former section 2251.107, we must conclude that Appellee Insurers' arguments would ultimately require this Court to go against the applicable statute and infer that the Legislature did not mean to make rate-filings open to public inspection as of the date of filing, but instead meant to limit the rate-filings' disclosure depending on any available PIA exceptions, despite clear statutory language allowing for open public inspection. As an intermediate appellate court, we follow the instruction of the supreme court that we interpret statutes under a plain-meaning review and that we do not resort to rules of construction or extrinsic aids to construe clear and unambiguous language:

> [W]e must take statutes as we find them and first and primarily seek the Legislature's intent in its language. Courts are not responsible for omissions in legislation, but we are responsible for a true and fair interpretation of the law as it is written. Additionally, "[i]t is at least theoretically possible that legislators—like judges or anyone else—may make a mistake." Even when it appears the Legislature may have made a mistake, courts are not empowered to "fix" the mistake by disregarding direct and clear statutory language that does not create an absurdity.

---

[2] And to the extent that these arguments reference common-law protections from disclosure as opposed to the statutory PIA exceptions, these issues, again, are not before us here.

*DeQueen*, 325 S.W.3d at 637–38 (internal citations omitted). Here, the clear and unambiguous text of former section 2251.107 requires that rate filings be open to public inspection on the date they are filed. *See id.* Accordingly, we sustain the State's issues on appeal.

## CONCLUSION

Having sustained the State's issues on appeal, we reverse the judgment of the district court and render judgment that the information made open to public inspection under Texas Insurance Code section 2251.107 is not subject to the PIA.

_____
Jeff Rose, Justice

Before Chief Justice Jones, Justices Pemberton and Rose

Reversed and Rendered

Filed:   August 29, 2013

14